SANDERS *v.* DODGE.

ADMINISTRATORS—INDEBTEDNESS TO ESTATE—INSOLVENCY—LIABILITY ON BOND.

An administrator is not liable on his bond for the amount owing by him to his intestate, where, at the time of his appointment he was insolvent, and so continued during the whole period of administration. Section 9433, 3 Comp. Laws.

Error to Washtenaw; Kinne, J. Submitted February 9, 1905. (Docket No. 41.) Decided May 22, 1905.

S. Eugene Dodge presented his final account as administrator of the estate of Susan S. Dodge, deceased, which was allowed in the probate court, and Caroline H. Sanders, guardian of Josephine S. and Susan E. Dodge, appealed to the circuit court. There was judgment affirming the order of the probate court, and contestant brings error. Affirmed.

*John F. Lawrence* and *Arthur Brown* (*Edson R. Sunderland*, of counsel), for appellant.

*B. M. Thompson* and *John P. Kirk*, for appellee.

MOORE, C. J. Susan S. Dodge died, leaving a husband and two minor children as her only heirs at law. S. Eugene Dodge, the husband, was appointed administrator of his wife's estate on June 24, 1901, gave a bond, and entered upon the duties of his trust. Among the items in the inventory which he filed as such administrator was his own note for $4,224.50, and payable to his wife one year from its date, December 4, 1899. The final account of the administrator was allowed March 13, 1903, and the administrator was allowed to report said note as uncollectible. From this order of the probate court an appeal was taken. The case was tried before the circuit judge, who found, as a matter of fact, that at the time when S. Eugene Dodge was appointed administrator he was pecuniarily irresponsible; that at no time since his appointment could this note, or any part of it, have been collected; and that during all of that period he was wholly insolvent. He further found, as a matter of law, that the order of the probate court should be affirmed. The case is brought here by writ of error.

The finding of the circuit judge that during the entire time of his administration the administrator was insolvent is abundantly borne out by the record. It discloses that the note was given for money borrowed by Mr. Dodge to enable him to purchase an interest in the business of his father, which business was afterwards conducted in the name of S. H. Dodge & Son. S. Eugene Dodge owed this firm a large sum of money, and the firm itself failed January 1, 1903. The claim of appellants is:

"We contend, on principle as well as on authority, that, when a debtor is appointed the administrator of his creditor, the debt at once becomes realized assets in his hands, to be duly administered by him, and this irrespective of his own financial condition, or of the efforts he may or may not have made to collect it."

It is their claim that, though Mr. Dodge had no means with which to pay this debt, because of the condition of the law the moment he became administrator he must be treated as having actually received the money, and, if he does not account for it, the sureties upon the administrator's bond are liable.    And they cite as sustaining that position *Kinney* v. *Ensign*, 18 Pick. (Mass.) 232; *Stevens* v. *Gaylord*, 11 Mass. 256; *Chapin* v. *Waters*, 110 Mass. 195; *Tarbell* v. *Jewett*, 129 Mass. 460; *Kelsey* v. *Smith*, 1 How. (Miss.) 68; *Judge of Probate* v. *Sulloway*, 68 N. H. 511 (49 L. R. A. 347); and many other cases.    It may be said of many of the cases cited by counsel for appellant that they sustain the position for which they contend.    We do not think, however, this is true of the case of *Crow* v. *Conant*, 90 Mich. 247, upon which they place great reliance; making therefrom a quotation contained in the opinion from *Kinney* v. *Ensign*, supra.    Justice GRANT, who wrote the opinion, quoted all he deemed necessary for the purposes of that case, but for the purposes of this case it may be better to quote more at length.    Justice Shaw wrote, among other things, as follows:

"The point mainly relied on for the defendant is that Austin Kinney, the plaintiff, being himself debtor on the personal security for which this mortgage was given, when he became administrator of the estate of his creditor he became liable to account for this debt in his administration account; that the sureties on his administration bond, being responsible for his whole administration account, would be responsible for such debt, and so the debt was to be considered as absolutely paid and extinguished, and the mortgage thereby de facto discharged.

"But in equity this ground cannot be maintained. * * * On technical grounds, as well as on considerations of policy, an administrator is not permitted to show that he could not collect a debt due from himself. But this is in the nature of an estoppel, and it is a well-settled rule of strict law that, although a party is bound by an estoppel as of a fact proved or admitted, yet it shall not be taken as a substantial fact, from which other facts can

be inferred. *Proprietors of Monumoi Great Beach* v. *Rogers*, 1 Mass. 159. So, in pleading, a party is held to admit all facts not traversed, but it is only for the determination of the issue in which such pleadings terminate. Such admission cannot be used elsewhere as a fact from which other facts may be inferred. Or the holding the fact of a debtor taking administration upon the estate of his creditor, to be a payment, may be deemed a legal fiction, adopted for purposes of justice and convenience, as well as from considerations of policy, and calculated generally to promote justice, but such a legal fiction will never be allowed to go so far as to work wrong and injustice.

" In the present case there is no necessity to consider Austin Kinney's debt to Parley as paid by his taking administration. Even though it might be a right on the part of the creditors and heirs of Parley to require Austin, the administrator, to credit his debt in his administration account, they were not bound to do so. It was a right they might waive. In point of fact, it has not been so accounted for. Indeed, it would have been highly inequitable to do so, when the effect would probably be to charge the sureties of the administrator with the amount, and to give the whole benefit to the respondent, who had purchased the equity of redemption at a sheriff's sale subject to this very mortgage."

In the case of *Crow* v. *Conant* it was claimed, as it is claimed here, that the debt of the executor, Nichols, must be treated as cash in his hands, and as such accounted for by him; and it was claimed this had the effect of discharging the mortgage, the foreclosing of which it was sought to enjoin. The court declined to take that view, and held the mortgage might be foreclosed. So far as the case is an authority upon the question here involved, it is not in favor of the appellant.

We have a statute which indicates what shall be done by an administrator after his appointment. He must give a bond. Section 9311, 3 Comp. Laws. He must return into the probate court an inventory. Section 9348, 3 Comp. Laws. He must have the property appraised. Section 9349. The statute provides with what property he shall be chargeable. Section 9433 reads:

" No executor or administrator shall be accountable for any debts due to the deceased, if it shall appear that they remain uncollected without his fault."

If the note in question had been given by a third party, it would not be claimed, under the facts disclosed by the record, that the administrator would be required to account for the amount thereof.   Because of the fact that the administrator is the debtor, shall we read into the statute a provision which shall make him accountable ?   The precise question has never been before this court.   It has, however, been presented in other courts.   In Nebraska there is a provision of the statute reading like our own. In construing this statute in *Howell* v. *Anderson*, 61 L. R. A. 313 (66 Neb. 575), Justice Barnes, writing for the court, said:

" The Massachusetts rule, as we will call it for convenience, is based on a legal fiction, and the presumption that all men are solvent and able to pay their obligations. It was but a short cut to say that one who was an administrator could not sue himself, and therefore he would be required to account to the estate for his individual debt as so much cash.   It was an easy way of solving a difficult problem, and one which we fully approve of, where the fact of insolvency is not satisfactorily made to appear.   In case the administrator was solvent at the time of his appointment, or any time during the administration of his office, and before his final settlement and discharge, he should be required to pay over in cash the amount of his antecedent debt.   In such a case the rule contended for by plaintiffs is a salutary one.   It results in no hardship to any one, and for that reason should be invoked and enforced.   But it seems to us that this rule should have no application where it is made to appear that the administrator was wholly insolvent when appointed, while acting, and at the time of settlement.   The defendant in this case filed his report in response to the citation, and brought his individual note into court, together with the other uncollectible claims due the estate, and turned them over to the county judge.   As the estate had not been fully administered, it was the duty of the county judge to appoint an administrator de bonis non, into whose hands the administrator's note, as well as the others uncollected and un-

converted, would go. The result to the estate would have been the same had another person than the defendant been appointed administrator. The estate has in no wise suffered by any act of his subsequent to his appointment. It appears beyond question that at the time the defendant was appointed administrator of Howell's estate he was wholly insolvent; that he remained in such insolvent condition during the entire time that he served as such administrator, and was insolvent at the time of his resignation and proposed settlement; that by reason of his condition it was at all times impossible for him to pay the antecedent debt he owed to the estate. Section 279, chap. 23, Comp. Stat. [1901], provides that 'no executor or administrator shall be accountable for any debts due to the deceased if it shall appear that they remain uncollected without his fault.' There is no reason why the antecedent debt of the administrator, where it is at all times uncollectible, and it is impossible for him to pay it, should be treated any different from any other uncollectible debt due the estate. The defendant in this case delivered up to the court his own uncollectible note, which came into his possession as administrator of the estate, and asked to have credited thereupon his commissions, amounting to $134.07. If he had not owed the estate this antecedent debt, he would have been entitled to withdraw from the assets thereof the amount above stated. It follows that his appointment, instead of reducing the available assets of the estate, resulted in their increase by the full amount of his commission. Instead of taking anything from the estate, he contributed his services to it gratuitously, and it was saved the expense that would otherwise have been paid to another administrator. It is unfortunate that the estate should lose the balance due upon Anderson's note, but if we should hold that this balance should be treated as cash in his hands, and make an order requiring him to pay it over, the result of such order would be to require Anderson's sureties to pay the antecedent debt he owed Howell, which could not be collected at any time during Howell's lifetime, and has at all times since that date remained absolutely uncollectible. By adhering to this legal fiction, we would require Anderson's sureties to take $700 from their pockets and pay it over to Howell's heirs on account of an unfortunate investment made by him in his lifetime, and impose upon them a liability upon their bond which they never contracted. Their agreement was that

Anderson was an honest, capable, and upright man, and would discharge his duties as administrator of Howell's estate properly; in other words, that he would account for all of the assets thereof that came into his hands, and pay over all the moneys collected for and on behalf of the estate to his successor or other proper authority. They never covenanted that Anderson was solvent and able to pay his antecedent debts. The sureties on his bond did not agree to convert Anderson's worthless note into cash, or create something out of nothing. Legal fictions should only be resorted to for the purpose of preventing a failure of justice, and when they would result in an unjust and inequitable judgment they should never be invoked.

"The later cases hold that where the administrator or executor is shown to have been insolvent at the time of his appointment, during the incumbency of his office, and at the time of his discharge, his bondsmen are not liable for his individual debt. *Estate of Walker*, 125 Cal. 242; *Baucus* v. *Stover*, 89 N. Y. 1, affirmed in 107 N. Y. 624; *Keegan* v. *Smith*, 39 N. Y. Supp. 826; *Re Georgi*, 21 Misc. Rep. 419, 47 N. Y. Supp. 1061; *McCarty* v. *Frazer*, 62 Mo. 263; *Harker* v. *Irick*, 10 N. J. Eq. 269; *Rader* v. *Yeargin*, 85 Tenn. 486; *State, ex rel. McClamrock*, v. *Gregory*, 119 Ind. 503; *Condit* v. *Winslow*, 106 Ind. 142.

"In *State, ex rel. McClamrock*, v. *Gregory*, the court uses the following language:

"'One question which seems to have been overlooked on the trial of the cause was the financial condition of Levin T. Miller, the administrator, during the period of his administration. The money collected by him while professing to act as the agent of the administrator in Missouri, and for which he had not accounted when he became administrator, was a claim in favor of his trust, which he should have inventoried and charged himself with; and if, by the use of due diligence, all or any part of the claim could have been saved to the estate, his sureties are therewith chargeable, but, if he was hopelessly insolvent, they do not become liable therefor, the burden as to the question of insolvency being on the administrator and his sureties.'

"Further on in the opinion the court says:

"'The debt of the administrator is to be accounted for as other debts or assets, and he may show his insolvency during the period of administration in discharge of his official liability.'

"Citing 2 Woerner on American Law of Administration, p. 654, § 311; *Griffith* v. *Chew*, 8 Serg. & R. 17; *Eichelberger* v. *Morris*, 6 Watts (Pa.), 42; *Tarbell* v. *Jewett*, 129 Mass. 457; *McCarty* v. *Frazer*, 62 Mo. 263. There being no direct statutory provision upon the question in this State, there seems to be no reason why the above rule should not be adopted. The recent text-writers recognize this rule to be in force generally at this time. Croswell on Executors & Administrators, p. 243, says:

" 'In most States, however, by statutory provision, it is enacted that the appointment of a debtor as executor or administrator does not operate as an extinguishment of the debt, but it is treated as any other debt owing to the estate, and if it can be collected (i. e., if the executor or administrator is solvent), then he is held to account for it as part of the assets. In other States the statutes, while not extinguishing the debt, treat it as cash in the hands of the executor or administrator, just as the equitable rule above stated does. In such a case, if the executor or administrator is insolvent during the period of administration, the debt is not charged as assets, but considered as an ordinary uncollectible debt.'

"In Dame on Administration, § 189, we find the following:

" 'It is a well-established rule of law, running back even before the Revolution, that an executor or administrator is considered as having paid the debts due from him to the estate, and as actually having in his possession that much more cash. If the personal representative is insolvent, the courts, in the interests of all concerned, modify this rule somewhat. He still charges himself with the amount of his debt, but it does not make it actually money. The law does not require impossibilities, and there is no more reason why he should be considered as having paid what he was utterly unable to pay, than any other creditor. He is held liable to the estate to the extent of his ability to pay the same at any time during administration.

"The text above quoted is supported by the case of *Lyon* v. *Osgood*, 58 Vt. 707. We think this is the better rule, and we therefore hold that where one is indebted to a deceased person, and is afterwards appointed administrator of his estate, and the fact is shown that when so appointed he was hopelessly insolvent, was so during all of the time of his administration, and remained in that condition up to and including the date of his settlement as administrator, he should be permitted to turn over the evidence of his uncollectible debt to his successor or other

proper authority, and be discharged from his official liability therefor."

This opinion cites a long list of very respectable authorities. Others are gathered in the note to the case. A like ruling was rendered in *Buckel* v. *Smith's Adm'r*, 26 Ky. Law Rep. 991, in which several cases are cited. These cases are well reasoned and appeal to our sense of justice. We prefer to follow them instead of the other line of cases.

Judgment is affirmed.

CARPENTER, McALVAY, GRANT, and HOOKER, JJ., concurred.