WALLBER, County Judge, Respondent, vs. WILMANNS, imp., Appellant.

*December 16, 1902—January 13, 1903.*

*Estates of decedents: Testamentary trustees: Executors: Accounting: Principal and surety: Action on executor's bond: Appeal and error: Limitation of actions.*

1. Where, on petition of beneficiaries under a will, the county court cites the executor to appear, file his account, and show cause why a trustee should not be appointed and the funds in the executor's hands paid over to him, the distinctive purpose of the proceeding is not changed, nor does the court lose its power to entertain and consider the whole matter and appoint such a trustee, although it does not do so until after a hearing on the executor's account, to which is attached a petition for construction of the will, followed by an appeal by the executor from the order stating his account. At most, if an irregularity, it is not one of which the surety on the executor's bond can complain.

2. Where an executor is also named as testamentary trustee under a will, his functions and duties as executor do not cease until his final account as such executor has been filed and allowed.

3. Where a county court has jurisdiction to settle and allow an executor's account, such settlement and allowance are binding on the sureties on his bond.

4. Under sec. 4014, Stats. 1898 (providing that the county court may permit an action on an executor's bond when the amount due has been ascertained and ordered paid, if the executor shall neglect to pay it when demanded), it is not necessary that a *devastavit* and default be determined against the executor before the commencement of an action on the bond.

5. An action against an heir or legatee of a surety on an executor's bond is not barred because no claim was filed against the estate of the surety, where it appears that the executor's account was not filed until after the surety's estate was settled.

6. A question cannot be considered on appeal in the absence of any findings, request for findings thereon, or exception that raises such question.

7. An executor's liability continues until his account is fully settled and the estate fully administered.

8. Where no final order has been made distributing a decedent's estate, recovery of the full amount found to be due from an

executor may be had against his surety, in an action at law on his bond, although the executor is a beneficiary under the will.

APPEAL from a judgment of the circuit court for Milwaukee county: WARREN D. TARRANT, Circuit Judge. *Affirmed.*

On September 13, 1878, the defendant James S. White was duly appointed executor of the estate of Mary Ann White, and on the same day duly qualified as such by accepting said trust and filing a bond in the usual form, signed by Frederick Wilmanns and F. S. Blodgett as sureties, in the sum of $20,000. Said bond was duly approved, and letters testamentary were duly issued. White thereafter entered upon the discharge of his duties, and took possession of all the property of deceased, and converted it into money prior to October 1, 1884. Prior to the proceedings hereinafter mentioned, the last account of White as executor was filed in 1884. On October 1, 1896, two of the beneficiaries under the will made separate petitions to the county court for the purpose of requiring White to file his final account, one of them asking that he be required to settle his account, and pay over to a trustee, to be appointed, the moneys they were entitled to. The citation was issued, but a hearing was delayed because of the disqualification of the county judge, but was finally heard by Judge BELDEN. On February 21, 1899, White filed his account. Objections were filed thereto, and a guardian *ad litem* for certain minors was appointed. In October White attached a petition to his final account, asking that a certain clause in Mrs. White's will be construed. On December 13, 1899, an order was made by Judge PERELES stating the executor's account, charging him with $7,410.95 over disbursements, and construing Mrs. White's will, which order was reduced to writing on December 29th. On December 13th all the parties interested in the estate were present or represented, and the matter of the appointment of D. L. Jones as trustee was talked

over, and virtually agreed upon, but no order was then entered. Later Mr. White appealed to the circuit court from the order stating his account. The case was tried, and by the judgment of the circuit court the order of Judge PERELES was affirmed, and the case remanded. On September 7, 1900, the order appointing the Mr. Jones as trustee was made, and thereafter a bond was filed as required and letters of trust were issued. Jones, as trustee, made a demand upon White to pay over the sum in his hands as executor, which was refused. Thereafter the trustee made a petition to the county court setting out the former proceedings, the demand and refusal of White to pay over, and prayed leave to commence this action on White's bond in the name of the county judge. Such leave was duly granted. In the meantime the surety Blodgett died insolvent. On January 12, 1891, the surety Wilmanns died testate, and his estate was closed, and his property assigned to the defendant *Marie Wilmanns* on March 18, 1892, and prior to the filing of White's account as executor, which estate amounted to more than $14,000. This action is to recover from *Mrs. Wilmanns* and the executor, White, the amount held by the latter hereinbefore mentioned. The defendants made separate answers, admitting many of the matters alleged in the complaint, but denying the rightful appointment of Jones as trustee, and setting up some matters that will be referred to in the opinion. The court found the facts, and by the ninth, tenth, and fifteenth findings found that Jones was duly appointed as trustee, and that White had refused and neglected to comply with the terms of his bond as executor upon demand. Both defendants excepted to these findings. Judgment was entered for the plaintiff for $8,394.70 and costs, from which *Mrs. Wilmanns* takes this appeal.

For the appellant there was a brief by *Pierson W. Halsey,* attorney, and *Charles Quarles,* of counsel, and oral argument by *Mr. Halsey* and *Mr. George Lines.*

*William Kaumheimer,* attorney, and *D.. Lloyd Jones,* of counsel, for the respondent.

BARDEEN, J.   1.   Many questions are raised on this appeal, the chief of which is whether the county court of Milwaukee county had the right or jurisdiction to appoint Mr. D. L. Jones as trustee.   We have been greatly aided in a solution of this question by the written opinion of the trial judge found in the record, but not printed, as it ought to have been.   It requires little more than a statement of the facts to show that the defendant's contention is without foundation.   Much of defendant's argument is based upon false assumptions of what the record discloses.   It appears that from 1884 to 1896 White, the executor, made no accounting to the court.   His final account had never been presented or allowed.   In October, 1896, two of the persons interested in the estate petitioned that he be cited to appear and file his final account and show cause why he should not pay over the funds in his hands to a trustee.   Such citation was issued, and he was directed to show cause why a trustee should not be appointed, etc.   This set the machinery of the law in motion, and the fact that matters were delayed for some time did not change the distinctive purpose of the proceeding.   The court had full jurisdiction of the proceeding, and no one is here complaining of want of notice who has any right to do so.   Neither did the delay in procedure devest the court of its power to entertain and consider the matter.   The different steps in the case of White's thereafter filing an account and a petition to have the will construed, and his appeal thereafter, did not oust the court of the right to hear the whole matter, and the fact that eventual relief was secured by several orders in the case is not one that the appellant can take advantage of in this collateral way.

It does not alter the situation at all that White was testamentary trustee.   His duties and functions as executor did not, in law, cease until his final account as such had been filed

and allowed.   See *Barney v. Babcock's Estate,* 115 Wis. 409,
91 N. W. 982.   The county court had ample jurisdiction to
settle and allow his account, and such settlement and allow-
ance are binding upon the sureties on his bond.   His duties as
executor continued until he qualified as testamentary trustee,
and, as it does not appear that he had so qualified, he held the
money in his hands as executor until his final account was
settled.   *Schinz v. Schinz,* 90 Wis. 236, 63 N. W. 162.   It
abundantly appears that at the time the order allowing his
account was made, it was talked over that Mr. Jones should be
appointed as trustee, and that Mr. White consented to that
arrangement.   The fact that White took an appeal from such
allowance and some little time intervened before the order of
appointment of the trustee was actually entered, is not con-
sidered one that vitiates such appointment, or, if deemed an
irregularity, is not one the appellant is in a position to take
advantage of.

2. Another point urged by appellant is that the judgment
against her is void because a *devastavit* and default had not
first been determined as against the executor.   There are
some things said in *Barth v. Graf.* 101 Wis. 27, 37, 76 N. W.
1100, 1103, which would seem to justify that contention.
This language is there used:

"And yet in all such cases it would seem the breach of the
bond must be fixed by the judgment, decree, or finding of the
court having jurisdiction, before an action will lie against the
sureties on the bond."

This is the rule sustained by the great weight of authorities,
*in absence of a statute on the subject.*   2 Brandt, Sur. (2d
ed.) § 578.   The mistake we made was in overlooking the
fact that we have a statute on the subject.   We think sec. 4014,
Stats. 1898, fully covers the situation, and renders further
discussion of the question unnecessary.   The statement in
*Barth v. Graf,* referred to, must be considered as modified as
to all cases coming within the purview of sec. 4014.   There

are also very grave doubts of the question being before us because of the failure of the court to make any findings that fairly cover the question, and because of failure of appellant to raise it by any proper request to find, or exceptions. If the question is before us at all, it is considered that the amount that should go into the hands of the trustee had been established by the court, and a demand and refusal of the trustee to pay over shown. The order permitting the trustee to commence this action was one which might have been secured without notice, and was not open to collateral attack. *Roberts v. Weadock,* 98 Wis. 400, 74 N. W. 93.

3. Another point urged with some confidence is that the right of action against the heir or legatee of the deceased surety, *Mrs. Wilmanns,* is barred, because no claim was filed against the estate of the deceased surety. The surety died in January, 1891, and the estate was distributed March 18, 1892. There are no findings, requests to find, or exceptions that raise the question. If the question were fairly presented, still we think the situation is not such as to call for an application of the statute. The executor did not file his annual account until long after the estate of Willmanns had been settled, and no claim was in existence that could have been filed during the pendency of settlement. The situation seems to have been fully covered by what was said by this court in *Mann v. Everts,* 64 Wis. 372, 25 N. W. 209, and *South Milwaukee Co. v. Murphy,* 112 Wis. 614, 88 N. W. 583, against the appellant's contention.

4. Another claim is that the claim against *Mrs. Wilmanns* is barred by secs. 4014 and 3968, which are claimed to operate as statutes of limitation. This question was raised by the answer, yet, as in the cases before mentioned, there is no finding, request to find, or exception which present the question. We note on passing, however, that the executor's liability is held to continue until his account is settled and the estate fully administered. Gary, Prob. Law, § 253, note 110,.

§ 480, note 25; 3 Woerner, Adm'n, 62. And see *Barney v. Babcock's Estate,* 115 Wis. 409, 91 N. W. 982. The judgment of the county court that White held the sum in controversy as executor is binding upon the sureties, and cannot be impeached in a collateral proceeding.

5. Finally, appellant objects to the amount of the judgment against her, because: First, the judgment included the income payable annually to the brothers and sisters of the executors; and, second, because, under the terms of his mother's will, he owns a one-fourth interest in the estate he holds. As to the first proposition, the finding of the county court is conclusive. It must be presumed that the court took into consideration all expenditures made by the executor up to the date his account was settled in 1899, and confirmed on appeal in 1900. The binding character of this judgment has already been alluded to. The answer to the second proposition is evident from the fact that, no final order having been made settling or distributing Mrs. White's estate, the trial court had no means of knowing how much would be the share of each distributee. This being an action at law on the bond, the court could not usurp the functions of the county court, and make a distribution of the estate held by the executor. When the matter comes before the proper tribunal, no doubt the court will protect *Mrs. Wilmanns* from any loss on account of any claim of White to the fund in controversy.

Many other questions have been raised and discussed by the appellant, but which are without any foundation in the record. Any that are not here noticed are deemed to have been correctly decided by the trial court.

*By the Court.*—Judgment is affirmed.