Estate of Davies: Karel and others, Respondents, vs. Pereles, Executrix, and others, Appellants.

*November 17—December 7, 1915.*

*Executors and administrators: Title to personal property: Testamentary trusts: When title vests in trustees: Failure to qualify: Loss of trust estate: Liability of sureties on bond of executors.*

1. The title to personal property of a testator vests in his personal representatives upon his death.
2. The title to the trust estate cannot vest in a testamentary trustee until the bond required by sec. 4025, Stats., has been given and filed.
3. Where the executors of a will, who were also by its terms made testamentary trustees, duly qualified as executors but failed to qualify as trustees, they could not act as trustees but continued to hold title to the estate as executors, and the sureties on their bond as executors were liable for their acts whereby the trust estate was lost.
4. Such executors never having qualified as trustees, the county court could not, by an order or decree, transfer the title to the property from them as executors to them as testamentary trustees.

Appeal from a judgment of the circuit court for Milwaukee county: Lawrence W. Halsey, Circuit Judge. *Affirmed.*

A proceeding was brought in the county court of Milwaukee county to require an accounting under the will of Robert Davies and a finding was made requiring the executors to account. From this finding an appeal was taken to the circuit court. An action was also brought in the circuit court upon the executors' bond of James M. Pereles and Thomas J. Pereles against the executors of the estate of James M. and Thomas J. Pereles, deceased, and *Ernest G. Miller* and *Fred A. Miller* as sureties upon the executors' bond, for the default of the executors under the bond involved in the county court proceeding. It was stipulated in open court that the appeal

from the county court proceeding and the action against the executors and their sureties be merged for the purpose of trial and final disposition.

Robert Davies, a resident of the city of Milwaukee, died testate in January, 1898, and his will was admitted to probate in the county court of Milwaukee on March 2, 1898. The will is long and contains many provisions. Consideration here will only be given to that portion that is concerned in this present appeal. Robert Davies gave, bequeathed, and devised all the residue of his estate, after enumerating some legacies and other payments, to Thomas J. Pereles and James M. Pereles, or to such person or persons that may be appointed in their stead, in trust to take care of and manage and to convert such parts that do not consist of money into money and to invest and reinvest at interest on notes and bonds secured by mortgage on improved real estate in the county of Milwaukee, and to receive the interest, rents, issues, and profits of all such trust estate until the 1st day of January, 1900, and one year thereafter. The will then directs to what persons and at what times payment of the net income is to be made to the year 1901. It further declares that after the year 1900, or within one year thereafter, the trustees shall distribute and set apart $40,000 as therein specified, and of this amount shall hold $12,000 for the benefit of Byron V. Davies and others, as thereinafter mentioned, and directs the distribution of the residue of the trust estate. The will directs and provides that the trustees shall manage, invest and reinvest, and receive interest, rents, issues, and profits of the $12,000 and shall pay and distribute the net income therefrom to Byron V. Davies half-yearly during his natural life; and upon his death shall pay and distribute the principal of $12,000 as follows: $2,000 to each child of Byron V. Davies, including the children of a deceased child, if any, by way of representation, living at the time of the decease of Byron V. Davies, and the remainder thereof to Walter V. Davies.

The will appoints Thomas J. Pereles and James M. Pereles as executors, who were on March 2, 1898, duly appointed as executors by the county court. The executors qualified by filing a bond in the sum of $100,000, executed by themselves as principals and by the defendants *Ernest G. Miller* and *Fred A. Miller* as sureties. Thomas J. Pereles and James M. Pereles never qualified as trustees of the estate by giving and filing with any court any trustees' bond, but held and retained such funds from the time they were appointed the executors under the last will and testament. An account was filed in the county court by James M. and Thomas J. Pereles as such executors reporting their administration of the estate of Robert Davies, and the court on February 28, 1901, allowed the account as follows: "It is ordered that the said account be and the same is hereby approved, allowed, and ordered to be recorded." On the same day the court entered thereon a decree containing the following: "It is ordered, adjudged, and decreed that the said executors hold in trust the sum of twenty thousand (20,000) dollars, . . ." of which amount they were so to hold $8,000 until the death of Franklin C. Davies and others, "and to pay and distribute the net income on the remaining twelve thousand (12,000) dollars to the said Byron V. Davies, as often as collected and practicable and not less than half-yearly, during the term of his natural life;" and upon his death to pay and distribute the principal of $12,000 as follows: $2,000 to each of the children of said Byron V. Davies, including children of a deceased child, if any, by way of representation, living at the time of the decease of Byron V. Davies, and the remainder thereof to the said Walter V. Davies. The county court also decreed: "And it is further ordered that upon the payment and distribution of the personal property hereinbefore assigned to and among the several parties thereto entitled, and upon filing with the court receipts for such payment, said estate be and the same hereby is declared to be finally settled, said ex-

ecutors as trustees be released and discharged from all further liability upon said estate."

After the entry of this final decree by the court the executors withdrew the $12,000 here in question from the two mortgages in which it was invested, as stated in their inventory, and invested it so that the entire sum was lost, and they, during their lifetime, omitted and failed to account therefor, and after the decease of said James M. and Thomas J. Pereles their personal representatives have failed to account for said sum of $12,000, except for the sum of $180.

James M. Pereles died testate in 1910 and Thomas J. Pereles died testate in 1913. Their executors are respectively *Jennie W. Pereles,* appointed and qualified to act as executrix of the will of James M. Pereles, and *Nath. Pereles, Jr.,* and *Nellie W. Pereles,* appointed and qualified to act as executors of the will of Thomas J. Pereles.

*John A. Raup,* one of the plaintiffs, was appointed as trustee to carry out the trust created by the will in favor and for the benefit of Byron V. Davies and his children, and he duly qualified so as to entitle him to act in that capacity.

Byron V. Davies and ten children, all of whom are beneficiaries under the trust, are now living.

Upon appeal to the circuit court in the present action the circuit court affirmed the decision of the county court and awarded judgment in favor of the plaintiffs for $11,820 with interest at six per cent. per annum from the 1st day of May, 1913, together with the costs and disbursements of this action, against *Jennie W. Pereles* as executrix of the last will and testament of James M. Pereles, deceased, *Nath. Pereles, Jr.,* as executor and *Nellie W. Pereles* as executrix of the last will and testament of Thomas J. Pereles, deceased, *Ernest G. Miller* and *Fred A. Miller,* defendants herein. From such judgment this appeal is taken.

For the appellants there was a brief by *Quarles, Spence &*

*Quarles,* attorneys, and *I. A. Fish,* of counsel, and oral argument by *Mr. Fish.*

For the respondents there was a brief by *Grady, Farnsworth & Kenney;* a separate brief by *Patrick W. Dean,* guardian *ad litem,* and *W. H. Timlin, Jr.,* of counsel; and oral argument by *Mr. Daniel H. Grady* and *Mr. Dean.*

SIEBECKER, J.    The trial court held that the failure of James M. Pereles and Thomas J. Pereles to account for the moneys which they had received into their hands from the Robert Davies estate constituted, under the facts and circumstances shown, a violation of their duties as executors and a breach of their executors' bond.    This conclusion is based on the facts as found by the court that it was the purpose, intent, and understanding of the county court, as expressed in its judgment of February 28, 1901, and of the executors and their sureties on the bond, that James M. and Thomas J. Pereles should hold the funds constituting the trust estate created by the will of Robert Davies, deceased, in their capacity as executors until the payment and distribution thereof among the persons entitled thereto under the will.    Concededly no part of the fund in controversy was ever paid to any of the persons beneficially entitled thereto under the trust.    It is also undisputed that no bond was ever given and no appointment was ever made by any court of these executors as trustees of the express trust created by the testator.    It is the contention of the appellants that the sureties on the executors' bond are not liable for the loss of this trust fund devised to James M. and Thomas J. Pereles in trust, to hold, manage, care for, and invest and reinvest on good interest-bearing notes secured by mortgages on improved real estate in Milwaukee county for the designated beneficiaries.    This claim is made on the grounds that on February 28, 1901, the county court ordered that the executors' accounts be approved and allowed, and on that day also by decree directed the

executors to administer the trust fund as prescribed in the will. It is urged that this action of the court operated to terminate the duties of the executors and to discharge the bond, and, further, that if it be held that this decree did not terminate the duties of the executors and discharge their bond as such, then the loss of the trust fund by the executors is attributable to their acts of mismanagement in their attempted execution of the duties of the testamentary trustees under the direction of the court, and the sureties on the executors' bond are therefore not liable for their default in the matter.

The defense rests on one of the two grounds: either that the duties of the executors did not persist after the entry of the county court's decree on February 28, 1901, or that before the termination of their executorship they erroneously assumed to perform the duties of such trustees under the direction of the county court without qualifying for the office.

It appears that the testator nominated and the court appointed the executors, who duly qualified. They were also made the trustees by the will to carry out the testamentary trusts. They returned an inventory of decedent's estate and received and took possession thereof as executors. They filed an account as executors, and petitioned the county court stating that they had administered the estate, prayed judgment that the account be allowed and that the residue of the estate in their hands be assigned. Upon due notice the account was examined and an order made by the court that the account be approved, allowed, and ordered to be recorded. The court rendered a decree on the day it approved and allowed the account which recites that the personal property of the estate remains in the hands of the executors as trustees for distribution, and thereupon ordered, adjudged, and decreed "that the said executors hold in trust the sum of twenty thousand (20,000) dollars" and to pay and distribute the net income of $12,000 thereof to Byron V. Davies during his

natural life, and at his death distribute the principal as directed by the will.   The executors under their executorship held the title to this personal property.   It is well established that the title to personal property of the testator vests in his personal representatives.   *Stehn v. Hayssen,* 124 Wis. 583, 102 N. W. 1074; *Schinz v. Schinz,* 90 Wis. 236, 63 N. W. 162; *Palmer v. O'Rourke,* 130 Wis. 507, 110 N. W. 389; *Estate of Kirkendall,* 43 Wis. 167.   A testamentary trustee, under the provisions of sec. 4025, Stats. 1913, in order to qualify as such trustee is required to give bond to the county judge having jurisdiction of the probate of the will, and the title to the trust estate cannot vest in the testamentary trustee until the proper bond required by this statute has been given and filed.   *Schinz v. Schinz, supra; McWilliams v. Gough,* 116 Wis. 576, 93 N. W. 550; *Wallber v. Wilmanns,* 116 Wis. 246, 93 N. W. 47.   In the *Schinz* and *McWilliams* cases the executors who qualified and received the estate into their hands as executors were also testamentary trustees, and the court held that the title to the trust estate remained vested in the executors until they qualified as testamentary trustees. In the *Gough Case* it is said:

"The statute (sec. 4025, Stats. 1898) obviously contemplates qualification of a testamentary trustee before his office as such shall commence, imposing upon him active duties. The formal assignment in this case of the property to the Goughs as testamentary trustees did not operate to change the title to the property.   It was in them before the order, and it remained in them after that, no trustee having been appointed in their stead, notwithstanding they failed to qualify.   Obviously, therefore, before a testamentary trustee has any active duties to perform, he must accept the trust in the manner contemplated by the statute, namely, by giving a bond as required by sec. 4025, Id."

So in the instant case, in default of the executors qualifying as testamentary trustees they could not assume to perform any duties as trustees and they held the estate as ex-

·ecutors, and, as stated, if the court by decree formally
.attempted to assign it to them as testamentary trustees on
February 28, 1901, such action of the court did not operate
to change the title to the property from them as executors to
that of testamentary trustees, because they had not qualified
.as trustees. The decree of the county court plainly indi-
cates, however, that the county court did not thereby under-
take to transfer the title of the property from them as ex-
·ecutors and to them as testamentary trustees. We regard
the cases of *Newcomb v. Williams,* 9 Met. 525, cited in the
*Schinz Case,* and *Cluff v. Day,* 124 N. Y. 195, 26 N. E. 306,
to be in harmony with the cases in this court and as support-
ing the holding of the lower court in the instant case. The
·circuit court properly held that the executors' bond in this
.case is not discharged.

*By the Court.*—The judgment appealed from is affirmed.


TIMLIN, J., took no part.